UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------x

DARRYL ROBINSON, DERRICK PENN, TERRANCE
ALLEN and PATRICK LAURENT, individually and on behalf
of others similarly situated,

                    Plaintiffs,

-against-

TOP OF THE LINE BROOKLYN, INC. d/b/a TIP TOP CAR
WASH, TOP OF THE LINE ONE, INC., d/b/a TIP TOP CAR
WASH, TOP OF THE LINE CAR WASH, INC. d/b/a
TIP TOP CAR WASH, SIGNATURE INVESTMENT GROUP
d/b/a SIG, MORVARY LLC, MANNY SHURKA, and
MICHAEL AYNGORN a/k/a MICHAEL AIINGORN,
jointly and severally,

                    Defendants.

----------------------------------------------------------------------x

16-cv-06152 (VSB) (AJP)

**PLAINTIFFS' FIRST
AMENDEND CLASS &
COLLECTIVE ACTION
COMPLAINT**

Jury Trial Demanded

        Plaintiffs, Darryl Robinson, Derrick Penn, Terrance Allen and Patrick Laurent,

individually and on behalf of all others similarly situated, as class representatives, upon personal

knowledge as to themselves and upon information and belief as to other matters, allege as

follows:

## NATURE OF THE ACTION

    1.    Plaintiffs are hourly carwash employees at defendants' carwash business located

at 1149 Utica Ave. 11203, Kings County, State of New York (hereinafter "Tip Top Car Wash").

Plaintiffs bring this action to recover minimum wages, overtime premium pay and unlawful

deductions owing to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§

201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiffs also bring claims

for unpaid spread-of-hours premiums and for failure to provide proper wage notices and wage

statements pursuant to the NYLL and the supporting regulations. Furthermore, plaintiffs

Robinson, Allen and Laurent bring claims for unlawful retaliation pursuant to the FLSA and NYLL.

2.      Plaintiffs bring their FLSA minimum wage, overtime premium pay and unlawful deductions claims on behalf of themselves and all other similarly situated employees of defendants and their NYLL minimum wage, overtime premium pay, spread-of-hours premium pay, unlawful deductions and failure to provide wage notices and wage statements claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all car wash hourly employees working for defendants in New York. Plaintiffs bring their FLSA and NYLL retaliation claims on behalf of themselves as individual plaintiffs.

## JURISDICTION AND VENUE

3.      With respect to the federal claims ascertained herein, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337 and 1343.  With respect to the state law claims ascertained herein, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  In addition, this Court has jurisdiction over plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

4.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(1) because at least two of the defendants reside in this Judicial District.

5.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

### Plaintiffs

6.      Plaintiff DARRYL ROBINSON ("Robinson") has been, at all times relevant, an adult residing in Kings County, New York.

2

7.     Plaintiff DERRICK PENN ("Penn") has been, at all times relevant, an adult residing in Kings County, New York.

8.     Plaintiff TERRANCE ALLEN ("Allen") has been, at all times relevant, an adult residing in Kings County, New York.

9.     Plaintiff PATRICK LAURENT ("Laurent") has been, at all times relevant, an adult residing in Kings County, New York.

10.     Throughout the relevant time period, plaintiffs performed work for defendants at Tip Top Car Wash located in Brooklyn, New York at 1149 Utica Ave. 11203, Kings County, State of New York.

11.     Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and their written consents forms are incorporated hereto by reference.

Defendants

12.     Upon information and belief, including data contained in the database of the New York Department of State, Division of Corporations, corporate defendant Top of the Line Brooklyn, Inc. d/b/a Tip Top Car Wash is an active New York Corporation with its principle place of business at 1149 Utica Avenue, Brooklyn, New York, 11203.

13.     Upon information and belief, including data contained in the database of the New York Department of State, Division of Corporations, corporate defendant Top of The Line One, Inc. is an active New York Corporation with its principle place of business at 1149 Utica Avenue, Brooklyn, New York, 11203.

14.     Upon information and belief, including data contained in the database of the New York Department of State, Division of Corporations, corporate defendant Top of the Line Car

Wash, Inc. d/b/a Tip Top Car Wash is an active corporation with its principal place of business at 1149 Utica Avenue, Brooklyn, New York, 11203.

15.     Upon information and belief, including data available on the website of corporate defendant Signature Investment Group d/b/a SIG (hereinafter referred to as "defendant SIG"), defendant SIG is an independent global investment firm located at 150 E. 58th Street, 2500 New York, New York 10155.

16.     Upon information and belief, including data contained in the database of the New York Department of State, Division of Corporations, corporate defendant Morvary, LLC (hereinafter referred to as "defendant Morvary") is an active New York Corporation with its principle place of business at "c/o SIG" 105 [sic] E. 58th Street, Suite 2400, New York, New York 10155. Moreover, upon information and belief, including information provided on defendant SIG's corporate website (located at the URL address www.sigglobal.com), defendant Morvary is a wholly owned subsidiary of corporate defendant SIG; corporate co-owner of corporate defendant Tip Top Car Wash; and corporate owner of the premises upon which Tip Top Car Wash operates.

17.     Upon information and belief, including information provided on defendant SIG's corporate website (located at the URL address www.sigglobal.com), individual defendant Manny Shurka ("defendant Shurka") is the President of the USA Division of defendant SIG. In addition, upon information and belief, including information provided by plaintiffs, defendant Shurka is a manager, supervisor, operator and owner of defendant Tip Top Car Wash.

18.     Upon information and belief, including information provided by plaintiffs, individual defendant Michael Ayngorn a/k/a Michael Aiingorn ("defendant Ayngorn") is co-owner, manager and operator of Tip Top Car Wash.

19.     Defendants Shurka and Ayngorn constitute the "individual defendants" and collectively with corporate defendants, the "defendants."

20.     The individual defendants participated in the day-to-day operations of the corporate defendants and acted intentionally and maliciously in their direction and control of plaintiffs and the corporate defendants' other similarly situated employees, and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations promulgated thereunder, and are jointly and severally liable with the corporate defendants.

21.     At all times relevant, defendants have been and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

22.     At all times relevant, defendants employed, and/or continue to employ, plaintiffs and each of the Collective Action members within the meaning of the FLSA.

23.     At all times relevant, plaintiffs, the Collective Action Plaintiffs and the Class Members were employed by defendants within the meaning of the NYLL, §§ 2 and 651.

24.     Upon information and belief, at all times relevant, the corporate defendants have had gross revenues in excess of $500,000. Specifically, Tip Top Car Wash is a popular car wash which has established itself in the Brooklyn area for approximately fifteen (15) plus years. Furthermore, Tip Top Car Wash on average is open twelve hours (12) hours a day, seven (7) days a week, and employs over (10) workers. Upon information and belief, including information provided by plaintiffs, Tip Top Car Wash services an average of 200 cars daily (although typically more) between Mondays and Thursdays, and an average of 350 cars daily (although typically more) between Fridays and Sundays. For "full detailing," Tip Top Car Wash

charges $150 per car, $200 per S.U.V., and $250 per van; and for "wash and wax," Tip Top Car

Wash charges $35.99 per car, with, on average, half of vehicles receiving full detailing services

and the other half receiving wash and wax services each day. Thus, plaintiffs estimate that, at all

times relevant, Tip Top Car Wash has earned revenues averaging $23,599 per day on Mondays

through Thursdays and $40,398.50 per day on Fridays through Sundays, totaling $215,591.50

per week and $11,210,758.00 per year.

## FLSA COLLECTIVE ACTION ALLEGATIONS

25.     Pursuant to 29 U.S.C. §§ 206 and 207, and 29 § C.F.R. 531.35, plaintiffs bring

their First, Second and Third Claims for Relief as a collective action under the FLSA on behalf

of themselves and the following collective:

> All persons employed by defendants at any time since August 3, 2013 and
> through the entry of judgment in this case (hereinafter, the "Collective
> Action Period") who worked as car wash attendants (the "Collective
> Action Plaintiffs").

26.     A collective action is appropriate in this circumstance because plaintiffs and the

Collective Action Plaintiffs are similarly situated, in that they were all subjected to defendants'

illegal policies of: failing to pay minimum wage for all hours worked; failing to pay overtime

premiums for work performed in excess of forty (40) hours each week; and unlawfully deducting

sums from the wages of their employees. As a result of these policies, plaintiffs and the

Collective Action Plaintiffs did not receive the legally-required minimum wages for all hours

worked and overtime premium payments for all hours worked in excess of forty (40) hours per

week.

27.     Plaintiffs and the Collective Action Plaintiffs have similar job duties and are

compensated in accordance to a similar, if not the same, payment structure.

6

## RULE 23 CLASS ALLEGATIONS

28.     Plaintiffs bring their Fourth through Ninth Claims for Relief pursuant to NYLL

and under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the

following class:

> All persons employed by defendants in New York at any time since
> August 3, 2010 and through the entry of judgment in this case (the "Class
> Period) who worked as hourly car wash employees (the "Class
> Members").

### The Class Members are readily ascertainable

29.     For purposes of notice and other purposes related to this action, the number and

identity of the Class Members, including their names and addresses, are readily available and

determinable from the records of defendants. Notice can be provided by means permissible under

Federal Rule of Civil Procedure 23.

### The Class Members are so numerous that joinder of all members is impracticable

30.     Upon information and belief, there are well in excess of forty (40) Class

Members.

### There are questions of law and fact common to the claims of plaintiffs and the claims of the Class

31.     Such common questions will determine defendants' liability to all (or nearly all)

Class Members. These common questions include whether defendants had a corporate policy of:

failing to pay minimum wage for all hours worked; failing to pay overtime premiums when

employees worked in excess of forty (40) hours per week; failing to pay an additional hour's

wage at minimum wage when employees worked a shift or split-shift lasting ten (10) or more

hours; deducting sums from the wages of employees; and failing to provide wage statements and

wage notices as required by NYLL § 195.

### Plaintiffs' claims are typical of Class Members' claims

32.     Plaintiffs and the Class Members are current and/or former employees of defendants whose employment with defendants was governed by defendants' corporate policies. Plaintiffs and the Class Members, were, *inter alia*, not paid the legally required minimum wage for all hours worked; not paid overtime premium pay for hours worked over forty (40) in a given workweek; not paid spread-of-hours premiums for days in which they worked in excess of ten (10) hours and/or a split shift spanning over ten (10) hours; had sums unlawfully deducted from their wages; not provided proper wage statements with each of their payments; and not provided proper wage notices when hired or before February 1 of each year. Thus, to the extent defendants are liable to plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members for the same claims.

### Plaintiffs and their Attorneys will fairly and adequately represent the Class

33.     There are no conflicts between plaintiffs and the Class Members, and plaintiffs bring their lawsuit out of a desire to help all Class Members. Furthermore, counsel for plaintiffs are experienced in the area of wage and hour and class action litigation, and can provide fair and adequate representation to plaintiffs and the Class Members.

### The questions of law and fact common to the Class predominate over any questions solely affecting the individual Class Members

34.     These common questions include, but are not limited to:

•     whether defendants employed plaintiffs and the Class Members within the meaning of the NYLL;

•     whether defendants failed to keep accurate and authentic time records for all hours worked by plaintiffs and the Class Members;

•     whether defendants failed and/or refused to pay plaintiffs and the Class Members at the lawfully required minimum wage rate for all hours worked;

- whether defendants failed and/or refused to pay plaintiffs and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

- whether defendants failed and/or refused to pay plaintiffs and the Class Members an extra hour of minimum wage when working shifts in excess of ten (10) hours or split shifts;

- whether defendants unlawfully deducted sums from the wages of plaintiffs and the Class Members;

- whether defendants failed to provide plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by NYLL;

- whether defendants failed to provide a proper wage notice to plaintiffs and the Class Members at the beginning of their employment and/or on February 1 of each year as required by NYLL;

- whether defendants' failure to properly pay plaintiffs and the Class Members was willful; and

- whether defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements, and attorneys' fees.

<u>A Class Action is superior to other available methods for the fair and efficient adjudication of this litigation</u>

35.     Defendants are sophisticated parties with substantial resources while the individual plaintiffs lack the financial resources necessary to prosecute this lawsuit. The individual Class Members have no interest or capacity to bring separate actions; plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## FLSA RETALIATION

36.     Plaintiffs Robinson, Allen and Laurent bring their Tenth Claim for Relief pursuant to the anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3) on behalf of themselves.

37.     Defendants retaliated against plaintiffs Robinson and Allen by terminating them from their employment shortly after they raised concerns on behalf of themselves and their similarly situated coworkers about defendants' violations of the FLSA.

38.     Defendants further retaliated against plaintiff Robinson by subjecting him to threats of physical violence when defendants discovered that plaintiff Robinson intended to file the instant wage and hour lawsuit.

39.     Defendants retaliated against plaintiff Laurent upon receipt of this Complaint by terminating him from his employment on August 8, 2016.

## NYLL RETALIATION

40.     Plaintiffs Robinson, Allen and Laurent bring their Eleventh Claim for Relief pursuant to the anti-retaliation provision of the NYLL § 215 on behalf of themselves.

41.     Defendants retaliated against plaintiffs Robinson and Allen by terminating them from their employment shortly after they raised concerns on behalf of themselves and their similarly situated coworkers about defendants' violations of the NYLL.

42.     Defendants further retaliated against plaintiff Robinson by subjecting him to threats of physical violence when defendants discovered that plaintiff Robinson intended to file the instant wage and hour lawsuit.

43.     Defendants retaliated against plaintiff Laurent upon receipt of this Complaint by terminating him from his employment on August 8, 2016.

## STATEMENT OF FACTS

### Defendants' Business

44.     At all times relevant, defendants have been in the carwash business.

45.     Upon information and belief, corporate defendants Top of the Line Brooklyn, Inc. d/b/a Tip Top Car Wash, Top of the Line One, Inc. d/b/a Tip Top Car Wash, and Top of the Line Car Wash, Inc. d/b/a Tip Top Car Wash (jointly "Tip Top Car Wash") are located at 1149 Utica Avenue, Brooklyn, New York, 11203, and provide car washing services, including, *inter alia*, detailing, exterior and interior washing and waxing to all types of vehicles, including, *inter alia*, cars, S.U.V.s, trucks and vans.

46.     Upon information and belief, defendant SIG is a corporate owner of Tip Top Car Wash. Upon information and belief, including information available on defendant SIG's corporate website located at the URL address www.sigglobe.com, defendant SIG "owns a comprehensive network of over 20 gasoline stations, carwashes, autorepair shops, and convenient stores... [including] Morvary, LLC."

47.     Upon information and belief, defendant Morvary is a corporate owner of Tip Top Car Wash.  Upon information and belief, including information provided by New York City Environmental Control Board, the New York City Department of Buildings and the New York Department of State, defendant Morvary is the entity responsible for covering fines incurred by Tip Top Car Wash. Further, upon information and belief, including information recorded with the New York City Department, corporate defendant Morvary owns the premises where Tip Top Car Wash is located.

48.     Upon information and belief, including information provided on defendant SIG's website and information provided by plaintiffs, individual defendant Shurka is the president of SIG and owner/operator of Tip Top Car Wash. At all times relevant, defendant Shurka had and retained the power to set Tip Top Car Wash's payroll policies, including the unlawful practices complained of herein. In addition, throughout the relevant period, defendant Shurka had and

retained the power to hire and fire employees, set schedules and wage rates, determine Tip Top Car Wash's policies with respect to payroll, and otherwise run the business of Tip Top Car Wash.

49.   Upon information and belief, including information provided by plaintiffs, defendant Ayngorn is a manager, owner and operator of Tip Top Car Wash.  At all times relevant, defendant Ayngorn set Tip Top Car Wash's payroll policies, including the unlawful practices complained of herein. In addition, throughout the relevant period, defendant Ayngorn was in charge of hiring and firing employees, setting schedules and wage rates, determining Tip Top Car Wash's policies with respect to payroll, and otherwise running the business of Tip Top Car Wash.

50.   Upon information and belief, at all times relevant, defendant SIG and defendant Morvary, along with the individual defendants, jointly owned, operated and managed the Tip Top Car Wash together as a single integrated business.

51.   The individual defendants jointly and severally have the power to: hire, fire and supervise the employees of Tip Top Car Wash, set the schedules of the employees of Tip Top Car Wash. determine the terms and conditions of employment of the employees of Tip Top Car Wash, determine the rate and methods of payment of the employees of Tip Top Car Wash, maintain employment records for the employees of Tip Top Car Wash, set the policies and procedures with respect to payroll at Tip Top Car Wash.

<u>Plaintiffs' Work for Defendants</u>

*Plaintiff Robinson*

52.   Robinson was employed as a car wash attendant by defendants from on or about November 27, 2014 until on or about February 1, 2016 at Tip Top Car Wash.

53.     At all times relevant, Robinson regularly worked from 8:00 a.m. to 8:00 p.m., seven days per week, for a total of 84 hours per week, and was not permitted to take a 30-minute break.

54.     Between November 27, 2014 and on or about December 31, 2014, Robinson was not paid at all for his work. Between on or about January 1, 2015 and on or about February 7, 2016, Robinson was paid a flat rate of $217.54 per week.

55.     During the period that defendants compensated Robinson, and although he regularly worked in excess of eighty (80) hours a week, Robinson's paychecks falsely reflected that he worked between nineteen (19) and fifty-nine (59) hours per week.

56.     At no point did defendants compensate Robinson one hour of minimum wage for the days in which he worked shifts or split-shifts in excess of 10-hours.

57.     At all times relevant, Robinson was required to purchase tools of the trade, including, *inter alia*, hard wax for waxing vehicles, rags and sponges for cleaning, washing and drying vehicles, and personal protective gear required to handle the dangerous and toxic chemicals that defendants required him to use.

58.     On or about February 7, 2016, defendants retaliated against Robinson by terminating him from his employment shortly after he raised concerns on behalf of himself and his similarly situated coworkers about defendants' minimum wage and overtime violations of the FLSA and NYLL.

59.     Upon information and belief, including information provided by plaintiff Robinson, on or about July 7, 2016, Robinson was further retaliated against by defendants whey he was physically threatened by individual defendant Ayngorn after he became aware that Robinson intended to file the instant Complaint. Upon information and belief, defendant

Ayngorn retaliated against Robinson with the intent to create a chilling effect in order to dissuade Robinson's similarly situated co-workers from exercising their rights under the FLSA and NYLL.

*Plaintiff Laurent*

60.     Laurent has been employed as a car was attendant by defendants since on or about November 27, 2014 at Tip Top Car Wash.

61.     At all times relevant, Laurent regularly worked from 8:00 a.m. to 8:00 p.m., seven days per week, for a total of 84 hours per week, and was not permitted to take a 30-minute break.

62.     Since on or about November 27, 2014, Laurent has been paid a flat rate of $120 per week.

63.     Although Laurent regularly worked in excess of 84 hours per week, his paycheck falsely reflects that he works less hours each week.

64.     At no point did defendants compensate Laurent one hour of minimum wage for the days in which he worked shifts or split-shifts in excess of 10-hours.

65.     At all times relevant, Laurent was required to purchase tools of the trade, including, *inter alia*, hard wax for waxing vehicles, rags and sponges for cleaning, washing and drying vehicles, and personal protective gear required to handle the dangerous and toxic chemicals that defendants required him to use.

66.     On or about August 8, 2016, defendants retaliated against Laurent by terminating him from his employment on August 9, 2016.  Specifically, defendant Ayngorn received a copy of the Complaint in this matter, and, after asking Laurent to provide him with his last name, defendant Ayngorn advised Laurent that he was terminated from his employment and that Laurent would be arrested if he ever attempted to return to the premises of Tip Top Car Wash.

Defendant Ayngorn further advised all of the employees of Tip Top Car Wash that he had terminated Laurent for his involvement in the instant lawsuit.

*Plaintiff Allen*

67.     Allen was employed as a car was attendant by defendants from on or about September 1, 2015 and on or about January 26, 2016 at Tip Top Car Wash.

68.     At all times relevant, Allen regularly worked from 8:00 a.m. to 8:00 p.m., six days per week, for a total of 72 hours per week, and was not permitted to take a 30-minute break.

69.     Between on or about September 1, 2015 until on or about September 30, 2015 Allen was paid a flat rate of $200 per week.  Between on or about October 1, 2015 and on or about December 31, 2015, Allen was paid a flat rate of $300 per week.  Between on or about January 1, 2016 and on or about January 26, 2016, Allen was paid a flat rate of $320 per week.

70.     Although Allen regularly worked in excess of 70 hours per week, his paycheck falsely reflected that he only worked 48 hours per week.

71.     At no point did defendants compensate Allen one hour of minimum wage for the days in which he worked shifts or split-shifts in excess of 10-hours.

72.     At all times relevant, Allen was required to purchase tools of the trade, including, *inter alia*, hard wax for waxing vehicles, rags and sponges for cleaning, washing and drying vehicles, and personal protective gear required to handle the dangerous and toxic chemicals that defendants required him to use.

73.     On or about January 26, 2016, defendants retaliated against Allen by terminating him from his employment shortly after he raised concerns on behalf of himself and his similarly situated coworkers about defendants' minimum wage and overtime violations of the FLSA and NYLL.

*Plaintiff Penn*

74.    Penn was employed as a car was attendant by defendants between on or about June 1, 2014 and on or about November 20, 2015 at Tip Top Car Wash.

75.    At all times relevant, Penn regularly worked from 8:00 a.m. to 9:00 p.m., seven days per week, for a total of 91 hours per week, and was not permitted to take a 30-minute break.

76.    Between on or about June 1, 2014 until on or about September 30, 2014, and then between on or about February 1, 2015 and March 31, 2015, Penn was paid a flat rate of $250 per week.  Between on or about April 1, 2015 and on or about April 30, 2015, Penn was paid a flat rate of $275 per week.  Between on or about May 1, 2015 and on or about June 30, 2015, Penn was paid a flat rate of $375 per week.  Between on or about July 1, 2015 and on or about October 31, 2015, Penn was paid a flat rate of $450 per week.  Between on or about November 1, 2015 and on or about November 30, 2015, Penn was not paid at all for his work.

77.    Although Penn regularly worked in excess of 91 hours per week, his paycheck falsely reflected that he only worked 56 hours per week.

78.    At no point did defendants compensate Penn one hour of minimum wage for the days in which he worked shifts or split-shifts in excess of 10-hours.

79.    At all times relevant, Penn was required to purchase tools of the trade, including, *inter alia*, hard wax for waxing vehicles, rags and sponges for cleaning, washing and drying vehicles, and personal protective gear required to handle the dangerous and toxic chemicals that defendants required him to use.

80.    Plaintiffs and defendants' other employees were hired by defendant Ayngorn.

81.    Defendant Ayngorn supervised plaintiffs and the other employees of Tip Top Car Wash throughout their employment periods.

82.    Defendant Ayngorn would set plaintiffs' schedules and the schedules of the other employees of Tip Top Car Wash.

83.    Plaintiffs saw defendant Ayngorn supervise, direct and control the work of the employees of Tip Top Car Wash.

## Defendants' Unlawful Corporate Policies

84.    Throughout the relevant time period, defendants did not maintain any formal timekeeping system in order to accurately record the number of hours that plaintiffs, the Collective Action Plaintiffs and the Class Members worked each week. As such, defendants' employees were never paid: minimum wage for all hours worked; overtime premiums for hours worked in excess of forty (40) in a given week; or spread-of-hours payments for days in which they worked more than ten (10) hours.

85.    Notwithstanding the fact that plaintiffs and the Class Members frequently worked more than ten (10) hours in a given day, defendants failed to pay them spread-of-hours premiums equal to an additional hour of minimum wage for each day that they worked in excess of ten (10) hours in a given day. Defendants' failure to pay plaintiffs or Class Members spread-of-hours premiums was a corporate policy that applied to all of defendants' employees working shifts of more than ten (10) hours in one day and/or split shifts.

86.    Notwithstanding the fact that plaintiffs and Class Members frequently worked shifts of more than ten (10) hours, plaintiffs and Class Members were not allowed to take a full thirty (30) minute uninterrupted break each day, in violation of NYLL §§ 162, *et seq.*

87.    Throughout the relevant time period, upon information and belief, defendants have employed other car wash attendants and hourly employees who similarly worked in excess of forty (40) hours per week and were similarly not paid overtime premiums for hours worked

over forty (40). Defendants' failure to pay plaintiffs, the Collective Action Plaintiffs and the Class Members overtime compensation of one and one half (1.5) times their regular hourly rate for hours over forty (40) each week was a corporate policy of defendants, which applied to all of their hourly employees throughout the relevant period.

88.     Throughout the relevant time period, upon information and belief, defendants have unlawfully deducted sums from plaintiffs', the Collective Action Plaintiffs' and the Class Members' wages. Specifically, plaintiffs, the Collective Action Plaintiffs and the Class Members were required to purchase their own tools of the trade, including, *inter alia*, hard wax for waxing vehicles, rags and sponges for cleaning, washing and drying vehicles, and personal protective gear required to handle the dangerous and toxic chemicals that defendants required them to use.

89.     Defendants did not provide plaintiffs or Class Members with wage notices at the time of hire or by February 1 of each year.

90.     Plaintiffs, the Collective Action Plaintiffs and the Class Members were all paid pursuant to the same corporate policies of defendants, including failing to pay at least minimum wage for all hours worked, failing to pay overtime premiums, failing to pay spread-of-hours premiums, and taking unlawful deductions.

## FIRST CLAIM FOR RELIEF
### (FLSA Unpaid Minimum Wage, 29 U.S.C. §§ 201 *et seq.*, Brought by Plaintiffs on Behalf of Themselves and the Collective Action Plaintiffs)

91.     Plaintiffs, on behalf of themselves and the Collective Action Plaintiffs, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

92.     By failing to pay minimum wage for all hours worked, defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.,* including 29 U.S.C. §§ 206 and 215(a)(2).

93.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

94.     Defendants' failure to pay minimum wages for all hours worked caused plaintiffs and the Collective Action Plaintiffs to suffer loss of wages and interest thereon, as well as substantial emotional distress. Therefore, plaintiffs and the Collective Action Plaintiffs are entitled to recover from defendants their unpaid compensation, compensatory damages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b), along with such other relief that the Courts deems just and proper.

### SECOND CLAIM FOR RELIEF
**(FLSA Unpaid Overtime, 29 U.S.C. §§ 201 *et seq.*, Brought by Plaintiffs on Behalf of Themselves and the Collective Action Plaintiffs)**

95.     Plaintiffs, on behalf of themselves and the Collective Action Plaintiffs, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

96.     By failing to pay minimum wage for all hours worked, defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.,* including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

97.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

98.     Defendants' failure to pay overtime premiums for all hours worked in excess of forty (4) in a given workweek caused plaintiffs and the Collective Action Plaintiffs to suffer loss of wages and interest thereon, as well as substantial emotional distress. Therefore, plaintiffs and the Collective Action Plaintiffs are entitled to recover from defendants their unpaid compensation, compensatory damages, liquidated damages, reasonable attorneys' fees, and costs

and disbursements of the action pursuant to 29 U.S.C. § 216(b), along with such other relief that

the Courts deems just and proper.

### THIRD CLAIM FOR RELIEF
**(FLSA Unlawful Deductions, 29 U.S.C. §§ 201 *et seq.* and 29 CFR 531.35,  Brought by Plaintiffs on Behalf of Themselves and the Collective Action Plaintiffs)**

99.     Plaintiffs, on behalf of themselves and the Collective Action Plaintiffs, repeat,

reallege and incorporate each and every preceding paragraph as if set forth fully herein.

100.     By unlawfully deducting sums from the wages of plaintiffs and the Collective

Action Plaintiffs, defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201

*et seq.* and 29 CFR 531.35.

101.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA

within the meaning of 29 U.S.C. § 255(a).

102.     Defendants' practice of unlawfully deducting sums from the wages of plaintiffs

and the Collective Action Plaintiffs caused plaintiffs and the Collective Action Plaintiffs to

suffer loss of wages and interest thereon, as well as substantial emotional distress.  Therefore,

plaintiffs and the Collective Action Plaintiffs are entitled to recover from defendants their unpaid

compensation, compensatory damages, liquidated damages, reasonable attorneys' fees, and costs

and disbursements of the action pursuant to 29 U.S.C. § 216(b), along with such other relief that

the Courts deems just and proper.

### FOURTH CLAIM FOR RELIEF
**(NYLL Unpaid Minimum Wage, NYLL §§ 650 *et seq.,* Brought by Plaintiffs on Behalf of Themselves and the Class Members)**

103.     Plaintiffs, on behalf of themselves and the Class Members, repeat, reallege and

incorporate each and every preceding paragraph as if set forth fully herein.

104.   By failing to pay minimum wage for all hours worked, defendants have violated and continue to violate the NYLL and the regulations promulgated thereunder.

105.   Defendants' failure to pay minimum wages for all hours worked caused plaintiffs and the Class Members to suffer loss of wages and interest thereon, as well as substantial emotional distress.   Therefore, plaintiffs and the Class Members are entitled to recover from defendants their unpaid compensation, compensatory damages, liquidated damages, reasonable attorneys' fees, and costs, pre-judgment and post-judgment interest, injunctive and declaratory relief, and disbursements of the action pursuant to NYLL §§ 663(1) *et al.,* along with such other relief that the Courts deems just and proper.

### FIFTH CLAIM FOR RELIEF
**(NYLL Unpaid Overtime, NYLL §§ 650 *et seq.,* Brought by Plaintiffs on Behalf of Themselves and the Class Members)**

106.   Plaintiffs, on behalf of themselves and the Class Members, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

107.   By failing to pay overtime premiums for all hours worked in excess of forty (40) in a given week, defendants have violated and continue to violate the NYLL and the regulations promulgated thereunder.

108.   Defendants' failure to pay overtime premiums for all hours worked in excess of forty (40) in a given workweek caused plaintiffs and the Class Members to suffer loss of wages and interest thereon, as well as substantial emotional distress.   Therefore, plaintiffs and the Class Members are entitled to recover from defendants their unpaid compensation, compensatory damages, liquidated damages, reasonable attorneys' fees, and costs, pre-judgment and post-judgment interest, injunctive and declaratory relief, and disbursements of the action pursuant to NYLL §§ 663(1) *et al.,* along with such other relief that the Courts deems just and proper.

## SIXTH CLAIM FOR RELIEF
### (NYLL Spread-of-Hours, NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 142-2.4 and 146-1.6, Brought by Plaintiffs on Behalf of Themselves and the Class Members)

109.    Plaintiffs, on behalf of themselves and the Class Members, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

110.    Defendants willfully violated plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where plaintiffs and/or the Class Members worked more than ten (10) hours per day or a split shift spanning over ten (10) hours, in violation of the NYLL §§ 650 *et seq*., and the regulations promulgated thereunder, including 12 N.Y.C.R.R. §§ 142-2.4 and 146-1.6.

111.    Defendants' failure to pay spread-of-hours compensation to plaintiffs and the Class Members caused plaintiffs and the Class Members to suffer loss of wages and interest thereon, as well as substantial emotional distress.  Therefore, plaintiffs and the Class Members are entitled to recover from defendants their unpaid compensation, compensatory damages, liquidated damages, reasonable attorneys' fees, and costs, pre-judgment and post-judgment interest, injunctive and declaratory relief, and disbursements of the action pursuant to NYLL §§ 663(1) *et al.,* along with such other relief that the Courts deems just and proper.

## SEVENTH CLAIM FOR RELIEF
### (NYLL Unlawful Deductions, NYLL §§ 193 and 196(d), Brought by Plaintiffs on Behalf of Themselves and the Class Members)

112.    Plaintiffs, on behalf of themselves and the Class Members, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

113.    By unlawfully deducting sums from the wages of plaintiffs and the Class Members, defendants have violated and continue to violate the NYLL and the regulations promulgated thereunder.

114.   Defendants' unlawful practice of deducting sums from plaintiffs' and the Class Members' wages caused plaintiffs and the Class Members to suffer loss of wages and interest thereon, as well as substantial emotional distress. Therefore, plaintiffs and the Class Members are entitled to recover from defendants their unpaid compensation, compensatory damages, liquidated damages, reasonable attorneys' fees, and costs, pre-judgment and post-judgment interest, injunctive and declaratory relief, and disbursements of the action pursuant to NYLL §§ 663(1) *et al.,* along with such other relief that the Courts deems just and proper.

### EIGHTH CLAIM FOR RELIEF
**(NYLL Failure to Provide Wage Notice, NYLL § 195(1), Brought by Plaintiffs on Behalf of Themselves and the Class Members)**

115.   Plaintiffs, on behalf of themselves and the Class Members, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

116.   Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195(1), on the date of hire and February 1 of each year, in English or in the language identified by plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer, and any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

117.   Due to defendants' violations of the NYLL, between April 9, 2011 and February 26, 2015, plaintiffs and the Class Members are entitled to recover from defendants fifty dollars

($50) per employee for each workweek that the violations occurred, for a maximum total of twenty-five hundred dollars ($2,500) per employee; and between February 27, 2015 and final judgment of this matter, plaintiffs are entitled to recover from defendants fifty dollars ($50) per employee for each workday that the violations occurred or continue to occur, for a maximum total of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, § 198(1-b), liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**NINTH CLAIM FOR RELIEF**
**(NYLL Failure to Provide Wage Statement, NYLL § 195(3), Brought by Plaintiffs on Behalf of Themselves and the Class Members)**

118.     Plaintiffs, on behalf of themselves and the Class Members, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

119.     Defendants have willfully failed to supply Plaintiffs and the Class Members wage statements with their pay each week as required by Article 6, § 195(3).

120.     Due to defendants' violations of the NYLL, between April 9, 2011 and February 26, 2015, plaintiffs and the Class Members are entitled to recover from defendants one-hundred dollars ($100) per employee for each workweek that the violations occurred, for a maximum total of twenty-five hundred dollars ($2,500) per employee; and between February 27, 2015 and final judgment of this matter, plaintiffs are entitled to recover from defendants one-hundred dollars ($100) per employee for each workday that the violations occurred or continue to occur, for a maximum total of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, § 195(3), liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## TENTH CLAIM FOR RELIEF
### (FLSA Prohibition Against Retaliation, 29 U.S.C. § 215(a)(3), Brought by Plaintiffs Individually and on Behalf of Themselves)

121.    Plaintiffs, individually and on behalf of themselves, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

122.    During the period covered by the applicable statute of limitations, defendants retaliated against plaintiffs Robinson, Allen and Laurent for complaining about the FLSA violations.

123.    As a result of this retaliation, these plaintiffs were terminated and seek their damages, as well as penalties for retaliation allowed under the FLSA.

## ELEVENTH CLAIM FOR RELIEF
### (NYLL Prohibition Against Retaliation, NYLL § 215, Brought by Plaintiffs Individually and on Behalf of Themselves)

124.    Plaintiffs, individually and on behalf of themselves, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

125.    During the period covered by the applicable statute of limitations, defendants retaliated against plaintiffs Robinson, Allen and Laurent for complaining about the NYLL violations.

126.    As a result of this retaliation, these plaintiffs were terminated and seek their damages, as well as penalties for retaliation allowed under the NYLL.

## RELIEF SOUGHT

**WHEREFORE**, plaintiffs, on behalf of themselves, the Collective Action Plaintiffs and the Class Members, request relief as follows:

A. Designation of this action as a collective action for the purposes of the claims brought on behalf of the Collective Action Plaintiffs, along with prompt issuance of opt-in notice

pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the opt-in class and designation of plaintiffs as representatives of the Collective Action Plaintiffs;

B. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and the appointment of plaintiffs and plaintiffs' attorneys to represent the Class;

C. An order declaring that defendants violated the FLSA in the manners stated in this complaint;

D. An order declaring that defendants' violations of the FLSA were willful;

E. An order declaring that defendants violated the NYLL in the manners stated in this complaint;

F. An order declaring that defendants' violations of the NYLL were willful;

G. An order tolling the statute of limitations;

H. An award of overtime compensation under the FLSA and NYLL;

I. An award of minimum wage compensation under the FLSA and NYLL;

J. An award of compensation for defendants' unlawful deductions under the FLSA and NYLL;

K. An award of spread-of-hours premium compensation under NYLL;

L. An award of compensation for defendants' notice and record-keeping violations under NYLL;

M. An award of damages for defendants' unlawful retaliation;

N. Reinstatement, or in lieu of reinstatement, an award of front-pay for defendants' unlawful retaliation;

O. An order enjoining any further threats or retaliatory acts towards plaintiffs and/or other current and former Tip Top Car Wash employees.

P. An award of liquidated damages pursuant to the FLSA;

Q. An award of liquidated damages pursuant to NYLL;

R. An award of compensatory damages for the emotional distress;

S. All penalties available under the applicable laws;

T. Attorneys' fees pursuant to 29 U.S.C. § 216, NYLL § 663 and all other applicable statutes;

U. Interest as provided by law; and

V. Such other relief as this Court deems just and proper.

## JURY TRIAL

Plaintiffs demand a jury trial for all causes of action and claims for which they have a right to a jury trial.

Dated: New York, New York
August 9, 2016

Respectfully submitted,

Mirer Mazzocchi Schalet Julien & Chickedantz, PLLC

By: Maria L. Chickedantz
*Attorney for Plaintiffs*
1500 Broadway, Suite 1200
New York, NY 10038
(212) 231-2235
maria@mmsjlaw.com