UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x
DARRYL ROBINSON, DERRICK PENN, TERRANCE
ALLEN and PATRICK LAURENT, individually and on behalf
of others similarly situated,

                    Plaintiffs,

-against-

TOP OF THE LINE BROOKLYN, INC. d/b/a TIP TOP CAR
WASH, TOP OF THE LINE ONE, INC., d/b/a TIP TOP CAR
WASH, TOP OF THE LINE CAR WASH, INC. d/b/a
TIP TOP CAR WASH, SIGNATURE INVESTMENT GROUP
d/b/a SIG, MORVARY LLC, ALL STAR CAR WASH, CORP.
MANNY SHURKA, and MICHAEL AYNGORN a/k/a
MICHAEL AIINGORN, jointly and severally,

                    Defendants.
-------------------------------------------------------------------------------x

16-cv-06152 (VSB) (AJP)

**PLAINTIFFS' SECOND
AMENDED CLASS &
COLLECTIVE ACTION
COMPLAINT**

**Jury Trial Demanded**

       Plaintiffs, Darryl Robinson, Derrick Penn, Terrance Allen and Patrick Laurent,

individually and on behalf of all others similarly situated, as class representatives, upon personal

knowledge as to themselves and upon information and belief as to other matters, allege as

follows:

## NATURE OF THE ACTION

    1.      Plaintiffs bring this action jointly and severally against (i)Defendant business

entities that comprised the now defunct "Tip Top Car Wash" formerly located at 1149 Utica

Ave. 11203—and shut down in retaliation for the filing of the initial complaint during the

pendency of the instant litigation—against (ii) the individual employers who exercised control

over Plaintiffs at Tip Top Car Wash, and against Defendant All Star Car Wash Corp., the

successor in interest of Tip Top Car Wash, opened after Defendants ceased operation of Tip Top

in retaliation for Plaintiffs bringing the instant action.

    2.      Plaintiffs are former hourly carwash employees at defendants' carwash business

located at 1149 Utica Ave. 11203, Kings County, State of New York (hereinafter "Tip Top Car Wash"). Plaintiffs bring this action to recover minimum wages, overtime premium pay, unlawful deductions and penalties for unlawful retaliation owing to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. and the New York Labor Law ("NYLL"), §§ 650 et seq. Plaintiffs also bring claims for unpaid spread-of-hours premiums and for failure to provide proper wage notices and wage statements pursuant to the NYLL and the supporting regulations.

3.        Plaintiffs bring their FLSA minimum wage, overtime premium pay and unlawful deductions claims on behalf of themselves and all other similarly situated employees of defendants and their NYLL minimum wage, overtime premium pay, spread-of-hours premium pay, unlawful deductions and failure to provide wage notices and wage statements claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all car wash hourly employees working for defendants in New York. Plaintiffs bring their FLSA and NYLL retaliation claims on behalf of themselves as individual plaintiffs

## JURISDICTION AND VENUE

4.        With respect to the federal claims alleged herein, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337 and 1343.  With respect to the state law claims ascertained herein, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  In addition, this Court has jurisdiction over plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.        Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(1) because at least two of the defendants reside in this Judicial District.

6.        This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C.

§§ 2201 and 2202.

## **THE PARTIES**

### Plaintiffs

7.      Plaintiff DARRYL ROBINSON ("Robinson") has been, at all times relevant, an adult residing in Kings County, New York.

8.      Plaintiff DERRICK PENN ("Penn") has been, at all times relevant, an adult residing in Kings County, New York.

9.      Plaintiff TERRANCE ALLEN ("Allen") has been, at all times relevant, an adult residing in Kings County, New York.

10.      Plaintiff PATRICK LAURENT ("Laurent") has been, at all times relevant, an adult residing in Kings County, New York.

11.      Throughout the relevant time period, plaintiffs performed work for defendants at Tip Top Car Wash located in Brooklyn, New York at 1149 Utica Ave. 11203, Kings County, State of New York.

12.      Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and their written consents forms are incorporated hereto by reference.

### Defendants

### Corporate Defendants

13.      Upon information and belief, including data contained in the database of the New York Department of State, Division of Corporations, corporate defendant TOP OF THE LINE BROOKLYN, INC. d/b/a Tip Top Car Wash is an active New York Corporation with its principal place of business at 1149 Utica Avenue, Brooklyn, New York, 11203.

14.      Upon information and belief, TOP OF THE LINE BROOKLYN, INC. at all

3

relevant times, was an employer of the plaintiffs who worked at Tip Top Car Wash as defined by FLSA and NYLL. In particular, defendants paid plaintiffs and similarly situated employees with checks from Top of the Line Brooklyn, Inc. and Top of the Line Brooklyn, Inc. issued W2s to some plaintiffs.

15.     Upon information and belief, including data contained in the database of the New York Department of State, Division of Corporations, corporate defendant TOP OF THE LINE ONE, INC. is an active New York Corporation with its principal place of business at 1149 Utica Avenue, Brooklyn, New York, 11203.

16.     Upon information and belief, TOP OF THE LINE ONE, INC. at all relevant times, was an employer of the plaintiffs who worked at Tip Top Car Wash as defined by FLSA and NYLL.

17.     Upon information and belief, including data contained in the database of the New York Department of State, Division of Corporations, corporate defendant TOP OF THE LINE CAR WASH, INC. d/b/a Tip Top Car Wash is an active corporation with its principal place of business at 1149 Utica Avenue, Brooklyn, New York, 11203.

18.     Upon information and belief, TOP OF THE LINE CAR WASH, INC. at all relevant times, was an employer of the plaintiffs who worked at Tip Top Car Wash as defined by FLSA and NYLL.

19.     Upon information and belief, including data available on the website of corporate defendant SIGNATURE INVESTMENT GROUP d/b/a SIG (hereinafter referred to as "defendant SIG"), defendant SIG is an independent global investment firm located at 150 E. 58th Street, 2500 New York, New York 10155.

20.     Upon information and belief, defendant SIG is a corporate owner of Tip Top Car

4

Wash. Upon information and belief, including information available on defendant SIG's corporate website located at the URL address www.sigglobe.com, defendant SIG "owns a comprehensive network of over 20 gasoline stations, carwashes, auto repair shops, and convenient stores… [including] Morvary, LLC."

21.     Upon information and belief Defendant SIG owns the property on which Tip Top Car Wash was located and also is an owner and operator of Tip Top Car Wash.

22.     Upon information and belief, SIG at all relevant times, was an employer of the plaintiffs who worked at Tip Top Car Wash as defined by FLSA and NYLL.

23.     Upon information and belief, including data contained in the database of the New York Department of State, Division of Corporations, corporate defendant MORVARY, LLC (hereinafter referred to as "defendant Morvary") is an active New York Corporation with its principal place of business at "c/o SIG" 105 [sic] E. 58th Street, Suite 2400, New York, New York 10155. Moreover, upon information and belief, including information provided on defendant SIG's corporate website (located at the URL address www.sigglobal.com), defendant Morvary is a wholly owned subsidiary of corporate defendant SIG; corporate co-owner of corporate defendant Tip Top Car Wash; and corporate owner of the premises upon which Tip Top Car Wash operates.

24.     Further, upon information and belief, including information recorded with the New York City Department, corporate defendant Morvary owns the premises where Tip Top Car Wash is located and also is an owner and operator of Tip Top Car Wash.

25.     Upon information and belief, including information provided by New York City

Environmental Control Board, the New York City Department of Buildings and the New York Department of State, defendant Morvary is the entity responsible for paying fines incurred by Tip Top Car Wash.

26.     Upon information and belief, MORVARY at all relevant times, was an employer of the plaintiffs who worked at Tip Top Car Wash as defined by FLSA and NYLL.

27.     Collectively Corporate Defendants Top of the Line Brooklyn, Inc , Top Of The Line One, Inc, Top Of The Line Car Wash, Inc., Signature Investment Group, Morvary, LLC are known as Defendant employer "Tip Top Car Wash."

28.     Upon information and belief, Defendant All Star Car Wash, LLC (hereafter "All Star" or "Defendant All Star" or "Defendant Successor Corporation") is a business corporation created under the laws of the State of New York.

29.     Upon information and belief, Defendant All Star Car Wash is located at 3170 Atlantic Avenue, Brooklyn New York, liable as a bona fide successor to Defendant Tip Top Car Wash and is responsible for any and all claims against Defendant Tip Top Car Wash, as it continues to operate the same business with the same ownership, management, equipment and services under the business name All Star Car Wash.

30.     Upon information and belief all corporate Defendants ("Defendant Tip Top Car Wash") jointly employed plaintiffs.

<u>Individual Defendants</u>

31.     Upon information and belief, including information provided on defendant SIG's corporate website (located at the URL address www.sigglobal.com), individual defendant Manny Shurka (hereinafter referred to as "defendant Shurka") is the President of the USA Division of defendant SIG.

32.     Upon information and belief at all times relevant Defendant Shurka is also a principal of Morvary, a subsidiary of SIG.

33.     In addition, upon information and belief, including information provided by plaintiffs, defendant Shurka was at all times relevant a manager, supervisor, operator and owner of defendant Tip Top Car Wash.

34.     Upon information and belief, at all times relevant, defendant Shurka had and retained the power, jointly with defendant Ayngorn, to set Tip Top Car Wash's payroll policies, including the unlawful practices complained of herein. In addition, throughout the relevant period, defendant Shurka, jointly with defendant Ayngorn, had and retained the power to hire and fire employees, set schedules and wage rates, determine Tip Top Car Wash's policies with respect to payroll, and otherwise run the business of Tip Top Car Wash.

35.     Further, Plaintiffs observed defendant Shurka on the premises of Tip Top Car Wash on a weekly basis.

36.     At various times, Defendant Shurka in his official capacity directed Plaintiffs to work faster in order to serve a greater number of customers, to "move the line," and to increase revenues.

37.     Defendant Shurka also routinely inspects VIP customer tickets to confirm that the customer was paying the correct amount for the service received.

38.     Defendant Shurka also routinely directed Plaintiffs to refer customer complaints to him.

39.     Plaintiffs knew Defendant Shurka as "the big boss."

40.     Upon information and belief, by virtue of his position with Tip Top Car Wash co-

owner SIG and Morvary, Defendant Shurka is personally liable for all debts, wages or salaries due and owing to the plaintiffs, for services performed by him for SIG and Morvary's benefit as owner of Tip Top Car Wash, pursuant to N.Y. Bus. Corp. Law § 630(a).

41.  Upon information and belief, including information provided by plaintiffs, individual defendant Michael Ayngorn a/k/a Michael Aiingorn ("defendant Ayngorn") was at all times relevant co-owner, manager and operator of Tip Top Car Wash.

42.  At all times relevant, defendant Ayngorn, jointly with defendant Shurka, had and retained the power, jointly with defendant Shurka, to set Tip Top Car Wash's payroll policies, including the unlawful practices complained of herein. In addition, throughout the relevant period, defendant Ayngorn, jointly with defendant Shurka, had the authority to hire and fire employees, set schedules and wage rates, determine Tip Top Car Wash's policies with respect to payroll, and otherwise run the business of Tip Top Car Wash.

43.  At all times relevant, defendant Ayngorn personally distributed wages by cash and check to Plaintiffs on a weekly basis.

44.  At all times relevant, defendant Ayngorn  directed Plaintiffs' work on a daily basis and was known to Plaintiffs as their boss.

45.  Plaintiffs and defendants' other employees were hired by defendant Ayngorn.

46.  Defendant Ayngorn supervised plaintiffs and the other employees of Tip Top Car Wash throughout their employment periods.

47.  Defendant Ayngorn would set plaintiffs' schedules and the schedules of the other employees of Tip Top Car Wash.

48.  Plaintiffs saw defendant Ayngorn supervise, direct and control the work of the employees of Tip Top Car Wash.

49.     Upon information and belief, Defendant Ayngorn signed plaintiffs' paychecks from the accounts of Top of the Line Brooklyn Inc.

50.     Upon information and belief, Defendant Ayngorn is or has been an officer of Top of the Line Brooklyn, Inc.

51.     Upon information and belief, Defendant Ayngorn is or has been an officer of Top Of The Line One, Inc.

52.     Upon information and belief, Defendant Ayngorn is or has been an officer of Top Of the Line Car Wash, Inc.

53.     Upon information and belief, by virtue of his position, Defendant Ayngorn is personally liable for all debts, wages or salaries due and owing to the plaintiffs, for services performed by Plaintiffs for the benefit of Tip Top Car Wash pursuant to N.Y. Bus. Corp. Law § 630(a).

54.     Defendant Ayngorn is a co-owner, manager and operator of the successor in interest to Tip Top Car Wash, Defendant All Star Car Wash.

55.     Upon information and belief, Defendant Ayngorn is or has been an officer of All Star Car Wash, Inc.

56.     Further, defendant Ayngorn has admitted his ownership of All Star Car Wash in an advertisement posted on Youtube: https://www.youtube.com/watch?v=3vtaiNWvTU0.

57.     Upon information and belief, All Star Car Wash is the mere continuation of Tip Top Car Wash.

58.     Defendants Shurka and Ayngorn constitute the "individual defendants" and collectively with corporate defendants, the "defendants."

59.     The individual defendants participated in the day-to-day operations of the

corporate defendants and acted intentionally and maliciously in their direction and control of plaintiffs and the corporate defendants' other similarly situated employees, and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations promulgated thereunder, and are jointly and severally liable with the corporate defendants.

60.     At all times relevant the individual defendants were aware of their obligations to pay wages in accordance with the FLSA and the NYLL and willfully failed to do so.

61.     At all times relevant, Defendant employer "Tip Top Car Wash" and its successor in interest Defendant All Star Car Wash have been and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

62.     At all times relevant, all defendants employed, plaintiffs and each of the Collective Action members within the meaning of the FLSA.

63.     At all times relevant, plaintiffs, the Collective Action Plaintiffs and the Class Members were employed by defendants within the meaning of the NYLL, §§ 2 and 651.

64.     Upon information and belief, at all times relevant, the corporate defendants have had gross revenues in excess of $500,000. Specifically, Tip Top Car Wash is a popular car wash which has established itself in the Brooklyn area for approximately fifteen (15) plus years. Furthermore, Tip Top Car Wash on average is open twelve hours (12) hours a day, seven (7) days a week, and employs over (10) workers. Upon information and belief, including information provided by plaintiffs, Tip Top Car Wash services an average of 200 cars daily (although typically more) between Mondays and Thursdays, and an average of 350 cars daily (although typically more) between Fridays and Sundays. For "full detailing," Tip Top Car Wash

charges $150 per car, $200 per S.U.V., and $250 per van; and for "wash and wax," Tip Top Car Wash charges $35.99 per car, with, on average, half of vehicles receiving full detailing services and the other half receiving wash and wax services each day. Thus, plaintiffs estimate that, at all times relevant, Tip Top Car Wash has earned revenues averaging $23,599 per day on Mondays through Thursdays and $40,398.50 per day on Fridays through Sundays, totaling $215,591.50 per week and $11,210,758.00 per year.

65.     Further upon information and belief All Star Car Wash has an average daily revenue in excess of $1600 and thus had gross revenues in excess of $500,000.

## FLSA COLLECTIVE ACTION ALLEGATIONS

66.     Pursuant to 29 U.S.C. §§ 206 and 207, and 29 § C.F.R. 531.35, plaintiffs bring their First, Second and Third Claims for Relief as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by defendants at any time since August 3, 2013 and through the entry of judgment in this case (hereinafter, the "Collective Action Period") who worked as car wash attendants (the "Collective Action Plaintiffs").

67.     A collective action is appropriate in this circumstance because plaintiffs and the Collective Action Plaintiffs are similarly situated, in that they were all subjected to defendants' illegal policies of: failing to pay minimum wage for all hours worked; failing to pay overtime premiums for work performed in excess of forty (40) hours each week; and unlawfully deducting sums from the wages of their employees. As a result of these policies, plaintiffs and the Collective Action Plaintiffs did not receive the legally-required minimum wages for all hours worked and overtime premium payments for all hours worked in excess of forty (40) hours per week.

68.     Plaintiffs and the Collective Action Plaintiffs have similar job duties and are

11

compensated in accordance to a similar, if not the same, payment structure.

## **RULE 23 CLASS ALLEGATIONS**

69.     Plaintiffs bring their Fourth through Ninth Claims for Relief pursuant to NYLL

and under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the

following class:

> All persons employed by defendants in New York at any time since
> August 3, 2010 and through the entry of judgment in this case (the "Class
> Period) who worked as hourly car wash employees (the "Class
> Members").

### The Class Members Are Readily Ascertainable

70.     For purposes of notice and other purposes related to this action, the number and

identity of the Class Members, including their names and addresses, are readily available and

determinable from the records of defendants. Notice can be provided by means permissible under

Federal Rule of Civil Procedure 23.

### The Class Members Are So Numerous That Joinder Of All Members Is Impracticable

71.     Upon information and belief, there are well in excess of forty (40) Class

Members.

### There Are Questions Of Law And Fact Common To The Claims Of Plaintiffs And The Claims Of The Class

72.     Such common questions will determine defendants' liability to all (or nearly all)

Class Members. These common questions include whether defendants had a corporate policy of:

failing to pay minimum wage for all hours worked; failing to pay overtime premiums when

employees worked in excess of forty (40) hours per week; failing to pay an additional hour's

wage at minimum wage when employees worked a shift or split-shift lasting ten (10) or more

hours; deducting sums from the wages of employees; and failing to provide wage statements and wage notices as required by NYLL § 195.

<u>Plaintiffs' Claims Are Typical Of Class Members' Claims</u>

73.        Plaintiffs and the Class Members are former employees of defendants whose employment with defendants was governed by defendants' corporate policies. Plaintiffs and the Class Members, were, inter alia, not paid the legally required minimum wage for all hours worked; not paid overtime premium pay for hours worked over forty (40) in a given workweek; not paid spread-of-hours premiums for days in which they worked in excess of ten (10) hours and/or a split shift spanning over ten (10) hours; had sums unlawfully deducted from their wages; not provided proper wage statements with each of their payments; and not provided proper wage notices when hired or before February 1 of each year. Thus, to the extent defendants are liable to plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members for the same claims.

<u>Plaintiffs And Their Attorneys Will Fairly And Adequately Represent The Class</u>

74.        There are no conflicts between plaintiffs and the Class Members, and plaintiffs bring their lawsuit out of a desire to help all Class Members. Furthermore, counsel for plaintiffs are experienced in the area of wage and hour and class action litigation, and can provide fair and adequate representation to plaintiffs and the Class Members.

<u>The Questions Of Law And Fact Common To The Class Predominate Over Any Questions Solely Affecting The Individual Class Members</u>

75.        These common questions include, but are not limited to:

- whether defendants employed plaintiffs and the Class Members within the meaning of the NYLL;

- whether defendants failed to keep accurate and authentic time records for all hours worked by plaintiffs and the Class Members;

13

- whether defendants failed and/or refused to pay plaintiffs and the Class Members at the lawfully required minimum wage rate for all hours worked;

- whether defendants failed and/or refused to pay plaintiffs and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

- whether defendants failed and/or refused to pay plaintiffs and the Class Members an extra hour of minimum wage when working shifts in excess of ten (10) hours or split shifts;

- whether defendants unlawfully deducted sums from the wages of plaintiffs and the Class Members;

- whether defendants failed to provide plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by NYLL;

- whether defendants failed to provide a proper wage notice to plaintiffs and the Class Members at the beginning of their employment and/or on February 1 of each year as required by NYLL;

- whether defendants unlawfully ceased operation of Tip Top Car Wash and terminated all Class and Collective Action Members in retaliation for the named Plaintiffs' bringing the instant action;

- whether defendants' failure to properly pay plaintiffs and the Class Members was willful; and

- whether defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements, and attorneys' fees.

### A Class Action Is Superior To Other Available Methods For The Fair And Efficient Adjudication Of This Litigation

76.     Defendants are sophisticated parties with substantial resources while the individual plaintiffs lack the financial resources necessary to prosecute this lawsuit. The individual Class Members have no interest or capacity to bring separate actions; plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## FLSA RETALIATION

77.　　Plaintiffs Robinson, Allen and Laurent bring their Tenth Claim for Relief pursuant to the anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3) on behalf of themselves and all persons fired when Tip Top was shut down in retaliation for Plaintiffs filing their complaint including the instant lawsuit.

78.　　Defendants retaliated against plaintiffs Robinson and Allen by terminating them from their employment shortly after they raised concerns on behalf of themselves and their similarly situated coworkers about defendants' violations of the FLSA.

79.　　Defendants further retaliated against plaintiff Robinson by subjecting him to threats of physical violence when defendants discovered that plaintiff Robinson intended to file the instant wage and hour lawsuit.

80.　　Defendants retaliated against plaintiff Laurent upon receipt of this Complaint by terminating him from his employment on August 8, 2016.

81.　　Further Defendants retaliated against all parties similarly situated to Plaintiffs in early October 2016, for Plaintiffs filing the original and first amended complaint by shutting down Tip Top Car Wash's operations at 1149 Utica Ave, Brooklyn, New York, and firing all of its employees in order to discourage them from engaging in the protected activity of participation in the instant lawsuit.

82.　　Defendants thereafter established All Star Car Wash Corp. as a disguised continuation of Top of the Line Brooklyn, Inc. in order to evade responsibilities under the wage and hour laws, thus establishing that the shut down and mass firing was not necessitated by business realities.

## NYLL RETALIATION

83.     Plaintiffs Robinson, Allen and Laurent bring their Eleventh Claim for Relief pursuant to the anti-retaliation provision of the NYLL § 215 on behalf of themselves and all persons fired when Tip Top was shut down in retaliation for Plaintiffs filing their complaint including the instant lawsuit.

84.     Defendants retaliated against plaintiffs Robinson and Allen by terminating them from their employment shortly after they raised concerns on behalf of themselves and their similarly situated coworkers about defendants' violations of the NYLL.

85.     Defendants further retaliated against plaintiff Robinson by subjecting him to threats of physical violence when defendants discovered that plaintiff Robinson intended to file the instant wage and hour lawsuit.

86.     Defendants retaliated against plaintiff Laurent upon receipt of this Complaint by terminating him from his employment on August 8, 2016.

87.     Further Defendants retaliated against all parties similarly situated to Plaintiffs in early October 2016, for Plaintiffs filing the original and first amended complaint by shutting down Tip Top Car Wash's operations at 1149 Utica Ave, Brooklyn, New York, and firing all of its employees in order to discourage them from engaging in the protected activity of participation in the instant lawsuit.

88.     Defendants thereafter established All Star Car Wash Corp. as a disguised continuation of Top of the Line Brooklyn, Inc. in order to evade responsibilities under the wage and hour laws, thus establishing that the shut down and mass firing was not necessitated by business realities.

## STATEMENT OF FACTS

Plaintiffs' Work for Defendants

*Plaintiff Robinson*

89.        Robinson was employed as a car wash attendant by defendants from on or about

November 27, 2014 until on or about February 1, 2016 at Tip Top Car Wash.

90.        At all times relevant, Robinson regularly worked from 8:00 a.m. to 8:00 p.m.,

seven days per week, for a total of 84 hours per week, and was not permitted to take a 30-minute

break.

91.        Between November 27, 2014 and on or about December 31, 2014, Robinson was

not paid at all for his work and thus his hourly rate was zero dollars per hour in such period.

92.        Between on or about January 1, 2015 and on or about February 7, 2016, Robinson

was paid a flat rate of $217.54 per week for 84 hours and thus he was paid an hourly rate of

$2.59 per hour, well below minimum wage.

93.        During the period that defendants compensated Robinson, and although he

regularly worked in excess of eighty (80) hours a week, Robinson's paychecks falsely reflected

that he worked between nineteen (19) and fifty-nine (59) hours per week.

94.        At no point did defendants compensate Robinson one hour of minimum wage for

the days in which he worked shifts or split-shifts in excess of 10-hours.

95.        At all times relevant, Robinson was required to purchase tools of the trade,

including, *inter alia*, hard wax for waxing vehicles, rags and sponges for cleaning, washing and

drying vehicles, and personal protective gear required to handle the dangerous and toxic

chemicals that defendants required him to use.

96.        On or about February 7, 2016, defendants retaliated against Robinson by

terminating him from his employment shortly after he raised concerns on behalf of himself and his similarly situated coworkers about defendants' minimum wage and overtime violations of the FLSA and NYLL.

97.       Upon information and belief, including information provided by plaintiff Robinson, on or about July 7, 2016, Robinson was further retaliated against by defendants' when he was physically threatened by individual defendant Ayngorn after he became aware that Robinson intended to file the instant Complaint. Upon information and belief, defendant Ayngorn retaliated against Robinson with the intent to create a chilling effect in order to dissuade Robinson's similarly situated co-workers from exercising their rights under the FLSA and NYLL.

*Plaintiff Laurent*

98.       Laurent has been employed as a car was attendant by defendants since on or about November 27, 2014 at Tip Top Car Wash.

99.       At all times relevant, Laurent regularly worked from 8:00 a.m. to 8:00 p.m., seven days per week, for a total of 84 hours per week, and was not permitted to take a 30-minute break.

100.     Since on or about November 27, 2014, Laurent has been paid a flat rate of $120 per week for 84 hours and thus he was paid an hourly rate of $1.43 per hour, well below minimum wage.

101.     Although Laurent regularly worked in excess of 84 hours per week, his paycheck falsely reflects that he works less hours each week.

102.     At no point did defendants compensate Laurent one hour of minimum wage for the days in which he worked shifts or split-shifts in excess of 10-hours.

103.     At all times relevant, Laurent was required to purchase tools of the trade,

18

including, *inter alia*, hard wax for waxing vehicles, rags and sponges for cleaning, washing and drying vehicles, and personal protective gear required to handle the dangerous and toxic chemicals that defendants required him to use.

104.     Defendants retaliated against Laurent by terminating him from his employment on August 9, 2016.   Specifically, defendant Ayngorn received a copy of the Complaint in this matter, and, after asking Laurent to provide him with his last name, defendant Ayngorn advised Laurent that he was terminated from his employment and that Laurent would be arrested if he ever attempted to return to the premises of Tip Top Car Wash.   Defendant Ayngorn further advised all of the employees of Tip Top Car Wash that he had terminated Laurent for his involvement in the instant lawsuit.

*Plaintiff Allen*

105.     Allen was employed as a car was attendant by defendants from on or about September 1, 2015 and on or about January 26, 2016 at Tip Top Car Wash.

106.     At all times relevant, Allen regularly worked from 8:00 a.m. to 8:00 p.m., six days per week, for a total of 72 hours per week, and was not permitted to take a 30-minute break.

107.     Between on or about September 1, 2015 until on or about September 30, 2015 Allen was paid a flat rate of $200 per week for 72 hours and thus he was paid an hourly rate of $2.78 per hour, well below minimum wage.

108.     Between on or about October 1, 2015 and on or about December 31, 2015, Allen was paid a flat rate of $300 per week for 72 hours and thus he was paid an hourly rate of $4.17 per hour, well below minimum wage.

109.     Between on or about January 1, 2016 and on or about January 26, 2016, Allen

was paid a flat rate of $320 per week for 72 hours and thus he was paid an hourly rate of $4.44 per hour, well below minimum wage.

110.     Although Allen regularly worked in excess of 70 hours per week, his paycheck falsely reflected that he only worked 48 hours per week.

111.      At no point did defendants compensate Allen one hour of minimum wage for the days in which he worked shifts or split-shifts in excess of 10-hours.

112.     At all times relevant, Allen was required to purchase tools of the trade, including, *inter alia*, hard wax for waxing vehicles, rags and sponges for cleaning, washing and drying vehicles, and personal protective gear required to handle the dangerous and toxic chemicals that defendants required him to use.

113.     On or about January 26, 2016, defendants retaliated against Allen by terminating him from his employment shortly after he raised concerns on behalf of himself and his similarly situated coworkers about defendants' minimum wage and overtime violations of the FLSA and NYLL.

*Plaintiff Penn*

114.     Penn was employed as a car was attendant by defendants between on or about June 1, 2014 and on or about November 20, 2015 at Tip Top Car Wash.

115.     At all times relevant, Penn regularly worked from 8:00 a.m. to 9:00 p.m., seven days per week, for a total of 91 hours per week, and was not permitted to take a 30-minute break.

116.     Between on or about June 1, 2014 until on or about September 30, 2014, and then between on or about February 1, 2015 and March 31, 2015, Penn was paid a flat rate of

$250 per week for 91 hours and thus he was paid an hourly rate of $2.75 per hour, well below minimum wage.

117.     Between on or about April 1, 2015 and on or about April 30, 2015, Penn was paid a flat rate of $275 per week for 91 hours and thus he was paid an hourly rate of $3.02 per hour, well below minimum wage.

118.     Between on or about May 1, 2015 and on or about June 30, 2015, Penn was paid a flat rate of $375 per week for 91 hours and thus he was paid an hourly rate of $4.12 per hour, well below minimum wage.

119.     Between on or about July 1, 2015 and on or about October 31, 2015, Penn was paid a flat rate of $450 per week for 91 hours and thus he was paid an hourly rate of $4.95 per hour, well below minimum wage.

120.     Between on or about November 1, 2015 and on or about November 30, 2015, Penn was not paid at all for his work and thus he was paid an hourly rate of zero.

121.     Although Penn regularly worked in excess of 91 hours per week, his paycheck falsely reflected that he only worked 56 hours per week.

122.     At no point did defendants compensate Penn one hour of minimum wage for the days in which he worked shifts or split-shifts in excess of 10-hours.

123.     At all times relevant, Penn was required to purchase tools of the trade, including, *inter alia*, hard wax for waxing vehicles, rags and sponges for cleaning, washing and drying vehicles, and personal protective gear required to handle the dangerous and toxic chemicals that defendants required him to use.

<u>Defendants' Unlawful Corporate Policies</u>

124.     Throughout the relevant time period, defendants did not maintain any formal

21

timekeeping system in order to accurately record the number of hours that plaintiffs, the Collective Action Plaintiffs and the Class Members worked each week. As such, defendants' employees were never paid: minimum wage for all hours worked; overtime premiums for hours worked in excess of forty (40) in a given week; or spread-of-hours payments for days in which they worked more than ten (10) hours.

125.    Notwithstanding the fact that plaintiffs and the Class Members frequently worked more than ten (10) hours in a given day, defendants failed to pay them spread-of-hours premiums equal to an additional hour of minimum wage for each day that they worked in excess of ten (10) hours in a given day. Defendants' failure to pay plaintiffs or Class Members spread-of-hours premiums was a corporate policy that applied to all of defendants' employees working shifts of more than ten (10) hours in one day and/or split shifts.

126.    Notwithstanding the fact that plaintiffs and Class Members frequently worked shifts of more than ten (10) hours, plaintiffs and Class Members were not allowed to take a full thirty (30) minute uninterrupted break each day, in violation of NYLL §§ 162, *et seq*.

127.    Throughout the relevant time period, upon information and belief, defendants have employed other car wash attendants and hourly employees who similarly worked in excess of forty (40) hours per week and were similarly not paid overtime premiums for hours worked over forty (40). Defendants' failure to pay plaintiffs, the Collective Action Plaintiffs and the Class Members overtime compensation of one and one half (1.5) times their regular hourly rate for hours over forty (40) each week was a corporate policy of defendants, which applied to all of their hourly employees throughout the relevant period.

128.    Throughout the relevant time period, upon information and belief, defendants have unlawfully deducted sums from plaintiffs', the Collective Action Plaintiffs' and the

Class Members' wages. Specifically, plaintiffs, the Collective Action Plaintiffs and the Class Members were required to purchase their own tools of the trade, including, *inter alia*, hard wax for waxing vehicles, rags and sponges for cleaning, washing and drying vehicles, and personal protective gear required to handle the dangerous and toxic chemicals that defendants required them to use.

129.     Defendants did not provide plaintiffs or Class Members with wage notices at the time of hire or by February 1 of each year.

130.     Plaintiffs, the Collective Action Plaintiffs and the Class Members were all paid pursuant to the same corporate policies of defendants, including failing to pay at least minimum wage for all hours worked, failing to pay overtime premiums, failing to pay spread-of-hours premiums, and taking unlawful deductions.

Defendants' Pattern of Retaliation, Retaliatory Closure and Successor In Interest Liability

131.     On August 3, 2016 Plaintiffs initiated the instant action.

132.     As discussed *supra,* upon receipt of the Complaint, Defendant Ayngorn read the Complaint aloud and in front of the assembled workers fired Plaintiff Laurent for his involvement as a named Plaintiff in the instant action.

133.     Previously in or about June or July 2016, Defendants, by and through Defendant Ayngorn, threatened employees with discharge if they engaged in filed a complaint related to their unlawful wages.

134.     In or about July 2016, Defendants, by and through Defendant Ayngorn, offered monetary payments to employees to drop the class action wage and hour lawsuit.

135.     In or about July or early August 2016, Defendants, by and through Defendant

23

Ayngorn, offered monetary payments to employees to drop the class action wage and hour lawsuit against the Employer.

136.     On or about August 9, 2016, the day that they fired Plaintiff Laurent in retaliation, Defendants, by and through Defendant Ayngorn, threatened employees with unspecified reprisal if they joined the instant lawsuit and further threatened employees with filing false criminal charges against them if they did not drop the wage and hour lawsuit.

137.     On or about August 22, 23 and 24, 2016 Defendants, by and through Defendant Ayngorn, offered monetary payments to employees if they dropped the class action wage and hour lawsuit against the Employer and said that the other plaintiffs were lying about their claims.

138.     In early October 2016, Defendants shut down its operations at 1149 Utica Ave, Brooklyn, New York and laid off all of its employees.

139.     In or about early October 2016, the Employer established All Star Car Wash Corp. as a disguised continuation of Tip Top Car Wash in order to evade responsibilities under the FLSA and to retaliate against the employees of Tip Top as would be members of the Class and Collective Action brought by the instant lawsuit.

140.     At all times relevant Tip Top Car Wash All Star Car Wash Corp. have had substantially identical management, business purposes operations, equipment, customers, and supervision, and ownership and therefore are alter egos.

141.     At all times relevant All Star Car Wash Corp. has been a mere continuation, and or has had substantial continuity or continuity of enterprise with Tip Top Car Wash under the totality of the circumstances.

142.     Specifically, All Star Car Wash Corp is owned by Michael Ayngorn, and upon information and belief all other defendants.

143.    Further on information and belief All Star Car Wash Corp offers the same or similar services as those offered by Tip Top Car Wash.

144.    Further on information and belief Defendants hired a friend of Plaintiffs to transfer all the property, equipment and supplies from Tip Top Car Wash to All Star Car Wash Corp.

145.    Upon information and belief All Star Car Wash Corp. utilizes the same signs and substantially similar pricing as Tip Top Car Wash.

146.    At all times relevant Tip Top Car Wash and All Star Car Wash Corp. have had substantially identical management, business purposes operations, equipment, customers, and supervision, and ownership and therefore are alter egos.

147.    At all times relevant the Tip Top Car Wash and All Star Car Wash Corp. have had notice of the instant action and the liability alleged herein against the selling corporation.

148.    Upon information and believe Tip Top Car Wash had the ability to provide relief but closed down and fired its employees to evade liability and retaliate against Plaintiffs and putative class and collective action members.

## FIRST CLAIM FOR RELIEF
### (FLSA Unpaid Minimum Wage, 29 U.S.C. §§ 201 *et seq.,* Brought by Plaintiffs on Behalf of Themselves and the Collective Action Plaintiffs)

149.    Plaintiffs, on behalf of themselves and the Collective Action Plaintiffs, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

150.    By failing to pay minimum wage for all hours worked, defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.,* including 29 U.S.C. §§ 206 and 215(a)(2).

151.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA

within the meaning of 29 U.S.C. § 255(a).

152.     Defendants' failure to pay minimum wages for all hours worked caused plaintiffs and the Collective Action Plaintiffs to suffer loss of wages and interest thereon.   Therefore, plaintiffs and the Collective Action Plaintiffs are entitled to recover from defendants their unpaid compensation, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b), along with such other relief that the Courts deems just and proper.

**SECOND CLAIM FOR RELIEF**
**(FLSA Unpaid Overtime, 29 U.S.C. §§ 201 *et seq.*, Brought by Plaintiffs on Behalf of Themselves and the Collective Action Plaintiffs)**

153.     Plaintiffs, on behalf of themselves and the Collective Action Plaintiffs, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

154.     By failing to pay minimum wage for all hours worked, defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.,* including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

155.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

156.     Defendants' failure to pay overtime premiums for all hours worked in excess of forty (4) in a given workweek caused plaintiffs and the Collective Action Plaintiffs to suffer loss of wages and interest thereon.   Therefore, plaintiffs and the Collective Action Plaintiffs are entitled to recover from defendants their unpaid compensation, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b), along with such other relief that the Courts deems just and proper.

### THIRD CLAIM FOR RELIEF
**(FLSA Unlawful Deductions, 29 U.S.C. §§ 201 *et seq.* and 29 CFR 531.35, Brought by Plaintiffs on Behalf of Themselves and the Collective Action Plaintiffs)**

157.     Plaintiffs, on behalf of themselves and the Collective Action Plaintiffs, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

158.     By unlawfully deducting sums from the wages of plaintiffs and the Collective Action Plaintiffs, defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.* and 29 CFR 531.35.

159.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

160.     Defendants' practice of unlawfully deducting sums from the wages of plaintiffs and the Collective Action Plaintiffs caused plaintiffs and the Collective Action Plaintiffs to suffer loss of wages and interest thereon, as well as substantial emotional distress.  Therefore, plaintiffs and the Collective Action Plaintiffs are entitled to recover from defendants their unpaid compensation, compensatory damages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b), along with such other relief that the Courts deems just and proper.

### FOURTH CLAIM FOR RELIEF
**(NYLL Unpaid Minimum Wage, NYLL §§ 650 *et seq.*, Brought by Plaintiffs on Behalf of Themselves and the Class Members)**

161.     Plaintiffs, on behalf of themselves and the Class Members, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

162.     By failing to pay minimum wage for all hours worked, defendants have violated the NYLL and the regulations promulgated thereunder.

163.     Defendants' failure to pay minimum wages for all hours worked caused plaintiffs

and the Class Members to suffer loss of wages and interest thereon, as well as substantial emotional distress. Therefore, plaintiffs and the Class Members are entitled to recover from defendants their unpaid compensation, compensatory damages, liquidated damages, reasonable attorneys' fees, and costs, pre-judgment and post-judgment interest, injunctive and declaratory relief, and disbursements of the action pursuant to NYLL §§ 663(1) *et al.,* along with such other relief that the Courts deems just and proper.

### FIFTH CLAIM FOR RELIEF
**(NYLL Unpaid Overtime, NYLL §§ 650 *et seq.,* Brought by Plaintiffs on Behalf of Themselves and the Class Members)**

164.     Plaintiffs, on behalf of themselves and the Class Members, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

165.     By failing to pay overtime premiums for all hours worked in excess of forty (40) in a given week, defendants have violated and continue to violate the NYLL and the regulations promulgated thereunder.

166.     Defendants' failure to pay overtime premiums for all hours worked in excess of forty (40) in a given workweek caused plaintiffs and the Class Members to suffer loss of wages and interest thereon. Therefore, plaintiffs and the Class Members are entitled to recover from defendants their unpaid compensation, liquidated damages, reasonable attorneys' fees, and costs, pre-judgment and post-judgment interest, injunctive and declaratory relief, and disbursements of the action pursuant to NYLL §§ 663(1) *et al.,* along with such other relief that the Courts deems just and proper.

## SIXTH CLAIM FOR RELIEF
### (NYLL Spread-of-Hours, NYLL §§ 650 *et seq.* and 12 N.Y.C.R.R. §§ 142-2.4 and 146-1.6, Brought by Plaintiffs on Behalf of Themselves and the Class Members)

167.     Plaintiffs, on behalf of themselves and the Class Members, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

168.     Defendants willfully violated plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where plaintiffs and/or the Class Members worked more than ten (10) hours per day or a split shift spanning over ten (10) hours, in violation of the NYLL §§ 650 *et seq.*, and the regulations promulgated thereunder, including 12 N.Y.C.R.R. §§ 142-2.4 and 146-1.6.

169.     Defendants' failure to pay spread-of-hours compensation to plaintiffs and the Class Members caused plaintiffs and the Class Members to suffer loss of wages and interest thereon, as well as substantial emotional distress.  Therefore, plaintiffs and the Class Members are entitled to recover from defendants their unpaid compensation, compensatory damages, liquidated damages, reasonable attorneys' fees, and costs, pre-judgment and post-judgment interest, injunctive and declaratory relief, and disbursements of the action pursuant to NYLL §§ 663(1) *et al.,* along with such other relief that the Courts deems just and proper.

## SEVENTH CLAIM FOR RELIEF
### (NYLL Unlawful Deductions, NYLL §§ 193 and 196(d), Brought by Plaintiffs on Behalf of Themselves and the Class Members)

170.     Plaintiffs, on behalf of themselves and the Class Members, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

171.     By unlawfully deducting sums from the wages of plaintiffs and the Class Members, defendants have violated and continue to violate the NYLL and the regulations promulgated thereunder.

172.      Defendants' unlawful practice of deducting sums from plaintiffs' and the Class Members' wages caused plaintiffs and the Class Members to suffer loss of wages and interest thereon, as well as substantial emotional distress. Therefore, plaintiffs and the Class Members are entitled to recover from defendants their unpaid compensation, compensatory damages, liquidated damages, reasonable attorneys' fees, and costs, pre-judgment and post-judgment interest, injunctive and declaratory relief, and disbursements of the action pursuant to NYLL §§ 663(1) *et al.*, along with such other relief that the Courts deems just and proper.

**EIGHTH CLAIM FOR RELIEF**
**(NYLL Failure to Provide Wage Notice, NYLL § 195(1), Brought by Plaintiffs on Behalf of Themselves and the Class Members)**

173.      Plaintiffs, on behalf of themselves and the Class Members, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

174.      Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195(1), on the date of hire and February 1 of each year, in English or in the language identified by plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer, and any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

175.      Due to defendants' violations of the NYLL, between April 9, 2011 and February 26, 2015, plaintiffs and the Class Members are entitled to recover from defendants fifty

dollars ($50) per employee for each workweek that the violations occurred, for a maximum total

of twenty-five hundred dollars ($2,500) per employee; and between February 27, 2015 and final

judgment of this matter, plaintiffs are entitled to recover from defendants fifty dollars ($50) per

employee for each workday that the violations occurred or continue to occur, for a maximum

total of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §

198(1-b), liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs,

pre-judgment and post-judgment interest, and injunctive and declaratory relief.

### NINTH CLAIM FOR RELIEF
**(NYLL Failure to Provide Wage Statement, NYLL § 195(3), Brought by Plaintiffs on Behalf of Themselves and the Class Members)**

176.     Plaintiffs, on behalf of themselves and the Class Members, repeat, reallege and

incorporate each and every preceding paragraph as if set forth fully herein.

177.     Defendants have willfully failed to supply Plaintiffs and the Class Members wage

statements with their pay each week as required by Article 6, § 195(3).

178.     Due to defendants' violations of the NYLL, between April 9, 2011 and February

26, 2015, plaintiffs and the Class Members are entitled to recover from defendants one-hundred

dollars ($100) per employee for each workweek that the violations occurred, for a maximum

total of twenty-five hundred dollars ($2,500) per employee; and between February 27, 2015 and

final judgment of this matter, plaintiffs are entitled to recover from defendants one-hundred

dollars ($100) per employee for each workday that the violations occurred or continue to occur,

for a maximum total of five thousand dollars ($5,000) per employee, as provided for by NYLL,

Article 6, § 195(3), liquidated damages as provided for by the NYLL, reasonable attorneys' fees,

costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## TENTH CLAIM FOR RELIEF
### (FLSA Prohibition Against Retaliation, 29 U.S.C. § 215(a)(3), Brought by Plaintiffs Individually and on Behalf of Themselves and the Collective Action Plaintiffs)

179.     Plaintiffs, individually and on behalf of the Collective Action Plaintiffs, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

180.     During the period covered by the applicable statute of limitations, defendants retaliated against plaintiffs Robinson, Allen and Laurent the Collective Action Plaintiffs for complaining about the FLSA violations and for their membership in the putative Collective Action.

181.     As a result of this retaliation, these plaintiffs were terminated and seek their damages, as well as penalties for retaliation allowed under the FLSA.

## ELEVENTH CLAIM FOR RELIEF
### (NYLL Prohibition Against Retaliation, NYLL § 215, Brought by Plaintiffs Individually and on Behalf of Themselves and the Class Members)

182.     Plaintiffs, individually and on behalf of the Class Members repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

183.     During the period covered by the applicable statute of limitations, defendants retaliated against plaintiffs Robinson, Allen and Laurent and the Class Members for complaining about the NYLL violations and all members of the class and for their membership in the putative class, as described *supra.*

184.     As a result of this retaliation, these plaintiffs were terminated and seek their damages, as well as penalties for retaliation allowed under the NYLL.

## RELIEF SOUGHT

**WHEREFORE**, plaintiffs, on behalf of themselves, the Collective Action Plaintiffs and the Class Members, request relief as follows:

A. Designation of this action as a collective action for the purposes of the claims brought on behalf of the Collective Action Plaintiffs, along with prompt issuance of opt-in notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the opt-in class and designation of plaintiffs as representatives of the Collective Action Plaintiffs;

B. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and the appointment of plaintiffs and plaintiffs' attorneys to represent the Class;

C. An order declaring that defendants violated the FLSA in the manners stated in this complaint;

D. An order declaring that defendants' violations of the FLSA were willful;

E. An order declaring that defendants violated the NYLL in the manners stated in this complaint;

F. An order declaring that defendants' violations of the NYLL were willful;

G. An order tolling the statute of limitations;

H. An award of overtime compensation under the FLSA and NYLL;

I. An award of minimum wage compensation under the FLSA and NYLL;

J. An award of compensation for defendants' unlawful deductions under the FLSA and NYLL;

K. An award of spread-of-hours premium compensation under NYLL;

L. An award of compensation for defendants' notice and record-keeping violations under NYLL;

M. An award of damages for defendants' unlawful retaliation;

N.  Reinstatement, or in lieu of reinstatement, an award of front-pay for defendants' unlawful retaliation;

O.  An order enjoining any further threats or retaliatory acts towards plaintiffs and all Class and Collective Action Members.

P.  An award of liquidated damages pursuant to the FLSA;

Q.  An award of liquidated damages pursuant to NYLL;

R.  All penalties available under the applicable laws;

S.  Attorneys' fees pursuant to 29 U.S.C. § 216, NYLL § 663 and all other applicable statutes;

T.  Interest as provided by law; and

U.  Such other relief as this Court deems just and proper.

## JURY TRIAL

Plaintiffs demand a jury trial for all causes of action and claims for which they have a right to a jury trial.

Dated: New York, New York
       June 9, 2017

Respectfully submitted,

Mirer Mazzocchi Schalet Julien & Chickedantz, PLLC

By: Maria L. Chickedantz
*Attorney for Plaintiffs*
1500 Broadway, Suite 1200
New York, NY 10038
(212) 231-2235
maria@mmsjlaw.com